PETER SUNUKJIAN, SBN 196896
*peter@briggsalexander.com*
PAUL SUNUKJIAN, SBN362716
*paul@briggsalexander.com*
**BRIGGS ALEXANDER, APLC**
4300 Campus Drive, Ste. 210
Newport Beach, CA 92660
Tel. 714-520-9250
Fax 714-520-9248

Attorneys for Plaintiff
MINDHYVE.AI, INC.

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MINDHYVE.AI, INC., a Nevada corporation,

Plaintiff,

v.

SHADI NACHAT, an individual; YAHYA NASHAWATI, an individual, and DOES 1-20,

Defendants.

CASE NO.: 8:26-cv-971

**VERIFIED COMPLAINT FOR:**

1) **VIOLATIONS OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836, *ET SEQ.*)**
2) **VIOLATIONS OF THE CALIFORNIA UNIFORM TRADE SECRET ACT (CAL. CIVIL CODE § 3426, *ET SEQ.*)**
3) **VIOLATIONS OF THE COMPUTER FRAUD AND ABUSE ACT (18 U.S.C. § 1030)**
4) **VIOLATIONS OF THE COMPREHENSIVE COMPUTER DATA ACCESS AND FRAUD ACT (CAL. PENAL CODE § 502)**
5) **BREACH OF CONTRACT**
6) **BREACH OF CONTRACT**
7) **BREACH OF FIDUCIARY DUTY**

Plaintiff MINDHYVE.AI, INC., by and through its attorneys, and for its Complaint against Defendant SHADI NACHAT, Defendant YAHYA NASHAWATI, and DOES 1-20, hereby alleges as follows:

## INTRODUCTION

1. Plaintiff MindHYVE.ai, Inc. ("MindHYVE" or the "Company") brings this action against its former Vice President of Product Management, Defendant Shadi Nachat ("Nachat"), for his calculated, six-month campaign of systematic misappropriation of MindHYVE's most valuable trade secrets, confidential business information, and proprietary technology. Nachat exploited his position of trust to exfiltrate confidential materials—including what appears to be proprietary source code, executive meeting recordings, financial data, and internal communications—to his personal email accounts, and transmitted proprietary materials to Defendant Yahya Nashawati ("Nashawati"), all while employed by and owing duties to MindHYVE.

2. Nachat's misconduct was not inadvertent. His own email subject lines—"JUST INCASE," "Admission of Embezzlement," and "Billal Crash Out"—reveal a deliberate scheme to stockpile proprietary materials for leverage and to weaponize confidential recordings against MindHYVE's CEO. Most egregiously, Nachat continued exfiltrating materials a mere forty-eight hours after executing twelve comprehensive agreements expressly prohibiting such conduct and acknowledging that any breach would cause "immediate and irreparable harm."

3. Despite MindHYVE's formal written demand for immediate return and deletion of all proprietary materials, Nachat has refused to return a single document, has failed to certify deletion from any device or account, and has maintained complete silence for more than two weeks. MindHYVE's trade secrets remain in Nachat's possession across multiple personal email accounts and cloud storage platforms, and have already been transmitted to at least one unauthorized third party. Without judicial intervention, MindHYVE faces ongoing and irreparable harm from the continued retention, potential further dissemination, and possible destruction of its most competitively sensitive assets.

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

## THE PARTIES

4. Plaintiff MindHYVE is a Nevada C-Corporation with EIN 99-4131400, founded in the summer of 2022, with principal operations located at 1501 Quail Street, Suite 130, Newport Beach, California 92660. MindHYVE develops and deploys proprietary artificial intelligence technology, including its HYVE-Fusion™ multi-model consensus architecture and a suite of eleven Digital Employees designed for regulated industries including healthcare, education, and legal services. MindHYVE operates across seventeen countries, has invested approximately $7 to $9 million in research and development, generates $3.58 million in recognized revenue, maintains a $350 million active pipeline, and has a pre-money valuation of $12.87 billion.

5. Defendant Nachat is an individual who, upon information and belief, resides at 932 N. Emily Street, Anaheim, California 92805. Nachat was employed by MindHYVE as Vice President of Product Management from approximately December 15, 2025, through February 6, 2026, at an annual salary of $150,000, reporting directly to MindHYVE's Chief Executive Officer. Prior to his direct employment, Nachat worked with MindHYVE through an affiliated entity, DV8 Infosystems ("DV8"), in a senior product leadership capacity with authorized access to certain MindHYVE systems.

6. Defendant Nashawati is an individual who, upon information and belief, resides in Orange County. Nashawati is a personal friend of Nachat.

7. MindHYVE is unaware of the true names, identities, or capacities of Defendants Does 1 through 20, or any of them, and for this reason said Defendants are sued herein by such fictitious names. When MindHYVE ascertains the true names, identities, and capacities of Defendants Does 1 through 20, or any of them, MindHYVE will amend this Complaint to allege the same. MindHYVE is informed and believes, and thereon alleges, that each such fictitiously named Defendant is responsible in some manner for the acts, occurrences, happenings, and/or omissions herein after alleged.

8. Defendant Nachat, Defendant Nashawati, and Defendants Does 1 through 20 are collectively referred to as "Defendants."

9. MindHYVE is informed and believe, and upon such information and belief alleges, that Defendants, and each of them, were acting as agents, servants, employees, successors, predecessors, associates, partners, joint ventures, representatives and/or in some capacity, however termed and/or described, of each other and were acting within the course and scope of each of the other Defendant with full knowledge and consent, such that the Defendants are jointly and severally liable to MindHYVE.

**JURISDICTION AND VENUE**

10. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*, and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

11. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367 because the state law claims arise from the same case or controversy as the federal claims and share a common nucleus of operative fact.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to these claims occurred within the Central District of California, including MindHYVE's principal operations in Newport Beach, California, and Nachat's employment, execution of agreements, and acts of misappropriation.

13. This Court has personal jurisdiction over Nachat because, upon information and belief, he is a resident of California domiciled in Anaheim, California, within this District, and his acts giving rise to this action occurred within this District.

14. This Court has personal jurisdiction over Nashawati because, upon information and belief, he is a resident of California domiciled in Orange County, California, within this District, and his acts giving rise to this action occurred within this District.

15. This Court has personal jurisdiction over Does 1-20 because, on information and belief, they are a residents of California domiciled in Orange County, California, and their acts giving rise to this action occurred within this District.

## FACTUAL BACKGROUND

### A. MindHYVE's Business and Proprietary Technology

16. MindHYVE is a pioneering artificial intelligence company that has developed, at great expense and over more than three years of intensive research, a proprietary multi-model consensus architecture called HYVE-Fusion™. Unlike any commercially available AI system, HYVE-Fusion employs five AI models working in concert: a proprietary classifier, three parallel large language models, and a domain-trained Small Reasoning Model that serves as an arbitrator to achieve consensus, eliminate hallucinations, and produce explainable and auditable AI outputs for regulated industries.

17. MindHYVE has invested approximately $7 to $9 million in developing this technology, which forms the basis for eleven proprietary Digital Employees including ArthurAI™ (education), ChironAI (healthcare), and JustineAI (legal services). These Digital Employees are built on HYVE-Fusion and deployed through MindHYVE's proprietary HYVE-Grid™ infrastructure—an Azure-based zero-trust platform with HIPAA/GDPR compliance and domain-isolated environments.

18. MindHYVE's trade secrets and confidential information include, but are not limited to: (a) the HYVE-Fusion architecture, including its model selection algorithms, consensus mechanisms, anti-hallucination protocols, and explainability frameworks; (b) the HYVE-Grid infrastructure design and security architecture; (c) all eleven Digital Employees and their underlying models, training data, prompt engineering, and configuration; (d) Eve, the meta-orchestrator Digital Employee responsible for creating all other Digital Employees and their synthetic training data; (e) synthetic training data and generation methodologies; (f) proprietary source code, algorithms, model weights, fine-tuning configurations, and API specifications; (g) business strategy, valuation models, investor materials, financial projections, and compensation structures including Restricted Stock Unit allocations; (h) customer and partner data, pipeline information, and deal structures; and (i) product roadmaps and development plans, including the MERIDIAN education platform.

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

19. Each of these categories derives independent economic value from not being generally known to, or readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use. MindHYVE has taken, and continues to take, reasonable measures to maintain the secrecy of this information, including requiring all employees and contractors to execute comprehensive confidentiality, non-disclosure, and information security agreements; implementing role-based access controls and zero-trust infrastructure; maintaining password-protected systems; and restricting access to sensitive information on a need-to-know basis.

**B. Nachat's Employment and Executed Agreements**

20. Prior to direct employment, Nachat worked with MindHYVE through DV8, an affiliated entity, in a senior product leadership capacity. In that role, Nachat had authorized access to certain MindHYVE systems through DV8's operational relationship with the Company.

21. On or about December 15, 2025, Nachat transitioned to direct W-2 employment with MindHYVE as Vice President of Product Management, at an annual salary of $150,000, reporting directly to MindHYVE's CEO, Belal K. Faruki.

22. On January 20, 2026, Nachat executed a comprehensive suite of employment, confidentiality, and information security agreements with an effective date of January 1, 2026. These agreements included the Confidentiality, Trade Secret, and Non-Disclosure Agreement, attached hereto as Exhibit A, the Information Security, Network and Cloud Access, attached hereto as Exhibit B, the Data Protection And Privacy Acknowledgment, attached hereto as Exhibit C, and the Equipment, Assets, And Acceptable Use Agreement, attached hereto as Exhibit D, (the "Agreements"), and numerous others

23. Each of the Agreements indicated that Nachat's agreement and performance was a condition of his employment. Each of the Agreements expressly prohibited Nachat from accessing MindHYVE's data and computer systems for anything other than company business. Each of the Agreements further specifically prohibited Nachat from accessing data and computer systems for any personal purpose. Each of the Agreements obligated

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

Nachat to avoid any attempts to bypass or weaken the security around the data and computer systems. Each of the Agreements prohibited the downloading or copying of any data or systems. And each of the Agreements prohibited the sharing of data or systems with any third parties. Finally, each of the Agreements contained an acknowledgement by Nachat that his breach of any of these terms would cause "immediate and irreparable harm" to MindHYVE and therefore would warrant immediate injunctive relief.

**C. Nachat's Systematic Exfiltration of MindHYVE Trade Secrets**

24. On February 6, 2026, at approximately 5:30 p.m., MindHYVE's CEO discovered Nachat's personal Gmail account (shadi.dv8@gmail.com) open on his company computer at MindHYVE's headquarters. The Sent folder was displayed, revealing a six-month pattern of systematic exfiltration of MindHYVE's confidential information and trade secrets.

25. The evidence reveals the following chronological pattern of misappropriation:

a) **August 12, 2025:** Nachat emailed a file captioned "BILL - JUST INCASE" with an attachment containing a transcript of a private meeting between MindHYVE's CEO and its Chief Financial Officer, Brian Walker, from Nachat's company email account (shadi.dv8@gmail.com) to his personal account (shadinachat). Nachat was not an invited participant in this meeting. The transcript was generated through Fireflies.ai, MindHYVE's meeting transcription platform, and distributed only to invited participants. The subject line "JUST INCASE" demonstrates deliberate stockpiling of confidential executive communications for future leverage.

b) **August 13 through August 26, 2025:** Nachat transmitted six separate files to Yahya Nashawati ("Nashawati"), a third-party personal friend who operates a restaurant kiosk software business, at the email address "yahyanashaw." These transmissions included files captioned "VALVOLINE - src-V.zip" (the "src" prefix indicating source code), "VA - public.zip," "NEW VAOLV - public_nv.zip," "VALVOLINE PROJ - V111.zip" (version-numbered, suggesting iterative collaborative development), "VALVOLINE - VALVOLINE.zip," and "PHOTOSHOP FILES - 6.9

Sourcefile (2)(1).zip." The systematic nature, versioning, and volume of these transmissions—six files to the same third party over two weeks—indicates organized collaboration using MindHYVE proprietary materials.

c) **September 26, 2025:** Nachat emailed "MERCURY BANK" with an attachment containing data from MindHYVE's Mercury banking platform to his personal account. Mercury is MindHYVE's startup banking platform; the attachment contained confidential financial and banking data.

d) **October 3 and November 12, 2025:** Nachat transmitted two separate files captioned "CHAT BACKUP.txt" to his personal account, representing two rounds of exfiltration of internal company communications.

e) **November 20, 2025:** Nachat emailed "VOICE RECORD RSU" with an attachment containing a recording of an executive update discussing Restricted Stock Unit allocations—highly sensitive compensation and financial information—to his personal account.

f) **December 3, 2025:** Nachat emailed "DONT" with an image attachment to his personal account.

g) **December 30, 2025:** Nachat emailed "Billal Crash Out - Urgent-meeting-w-Bill_2025-10-28.mp3"—an audio recording of an October 28, 2025 meeting with MindHYVE's CEO—to his personal account. The derogatory subject line "Billal Crash Out" reveals personal hostility toward the CEO and an intent to weaponize confidential executive recordings.

h) **January 22, 2026:** Just forty-eight hours after executing all twelve Agreements, Nachat emailed "Admission of Embezzlement Billal, Belal, Bill - 01-22-26 Admission EMBEZ.zip" to a different personal account (shadinachat123), with the file also saved to Google Drive. This is the most significant exfiltration event because it demonstrates: (i) Nachat's characterization of MindHYVE materials as purported evidence of wrongdoing by the CEO, confirming deliberate stockpiling for leverage; (ii) inclusion of multiple variations of the CEO's name, suggesting searchability intent; and (iii) willful,

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

conscious disregard of the twelve Agreements he had signed a mere two days earlier, all of which expressly prohibited this exact conduct.

**C. Nachat's Unauthorized Access to Restricted Systems**

26. To obtain the CEO/CFO meeting transcript (August 12, 2025) and other executive meeting recordings, Nachat accessed portions of MindHYVE's computer systems to which he was not authorized. Specifically, the meeting transcripts at issue were generated through Fireflies.ai and distributed only to invited meeting participants. Nachat was not invited to or an authorized attendee of the meetings between CEO Faruki and CFO Walker or between CEO Faruki and prospective customer Jason Nordlund.

27. To obtain these materials, Nachat necessarily exploited administrative access privileges—either by accessing the Fireflies.ai administrative portal, accessing executive email inboxes through Microsoft 365 administrative privileges, or using other unauthorized methods—to retrieve files from areas of MindHYVE's computer systems that were restricted from his access. Nachat's Vice President of Product Management role did not authorize access to private executive financial discussions, CEO/CFO strategic meetings, or customer meetings to which he was not invited.

**D. Termination, Demand, and Non-Compliance**

28. Upon discovering the exfiltration on February 6, 2026, MindHYVE's CEO, with the assistance of MindHYVE's Vice President of Agentic Engineering, Waleed Faruki, reviewed and documented the evidence. Nachat was terminated verbally that day, effective immediately, for cause. Nachat's total W-2 employment with MindHYVE lasted approximately seven and one-half weeks.

29. On February 8, 2026, MindHYVE issued a formal termination letter to Nachat via DocuSign, addressed to 932 N. Emily Street, Anaheim, California 92805. The letter demanded: (a) immediate return of all MindHYVE materials; (b) permanent deletion of all MindHYVE materials from all personal devices, accounts, and cloud storage; and (c) written certification of compliance.

30. As of the date of the filing of this Complaint, Nachat has not returned any materials, has not certified deletion from any device or account, and has not responded to MindHYVE's demand in any manner. Nachat's complete non-compliance for more than two weeks confirms the ongoing and immediate nature of the threat to MindHYVE's trade secrets and demonstrates Nachat's contempt for his contractual obligations.

**E. Third-Party Disclosure to Yahya Nashawati**

31. Six of Nachat's transmissions were directed to Yahya Nashawati, a personal friend who operates a commercial software business. The files transmitted to Nashawati—including what appears to be proprietary source code ("src-V.zip"), version-numbered project files, and design assets—indicate that Nachat was collaborating with Nashawati on a project using MindHYVE's proprietary materials, potentially a competing product or a side venture built on MindHYVE's proprietary code and intellectual property.

32. Once trade secrets have been disclosed to a third party, the secrecy upon which their protection depends is compromised and can never be fully restored. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1011–12 (1984). MindHYVE has no way to determine the full extent to which Nashawati has used, incorporated, or further disseminated MindHYVE's proprietary technology.

**F. Ongoing Harm and Risk of Further Dissemination**

33. Nachat's pattern of transferring files among multiple personal accounts (shadi.dv8@gmail.com, shadinachat, shadinachat123, and Google Drive), his complete failure to comply with MindHYVE's demand for return and deletion, and his transmission of materials to a third party create an ongoing, escalating risk of further dissemination, use, or destruction of MindHYVE's trade secrets. Every day that passes increases the risk that materials will be disseminated further, reverse-engineered, or incorporated into competing products, causing harm that cannot be remedied by monetary damages alone.

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

**FIRST CAUSE OF ACTION**

**Violations Of The Defend Trade Secrets Act**

**(18 U.S.C. § 1836, *et seq.*)**

***(Against All Defendants)***

34. MindHYVE incorporates by reference the preceding paragraphs as though fully set forth herein.

35. MindHYVE possesses trade secrets as defined by 18 U.S.C. § 1839(3), including the HYVE-Fusion™ architecture, HYVE-Grid™ infrastructure, Digital Employee configurations, Eve meta-orchestrator, synthetic training data methodologies, proprietary source code, financial information, and business strategy materials. Each of these derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and MindHYVE has taken reasonable measures to keep such information secret, including execution of twelve comprehensive confidentiality agreements with Nachat, implementation of role-based access controls, and maintenance of password-protected computer systems.

36. Nachat misappropriated MindHYVE's trade secrets within the meaning of 18 U.S.C. § 1839(5) by: (a) acquiring trade secrets through improper means, including unauthorized access to restricted areas of MindHYVE's computer systems (Fireflies.ai transcripts and executive communications to which he lacked authorized access); (b) disclosing trade secrets without MindHYVE's consent to third parties, including Nashawati; and (c) using trade secrets in a manner that breached a duty to maintain secrecy and limit use, as established by the twelve Agreements executed by Nachat.

37. MindHYVE's trade secrets relate to products and services used in, and intended for use in, interstate and foreign commerce. MindHYVE is a Nevada corporation with operations in California, serving customers across seventeen countries, with $3.58 million in recognized revenue and a $350 million active pipeline. The misappropriated materials were transmitted via interstate internet communications (Gmail) from California.



BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

38. Nachat's and Nashawati's misappropriation was willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C). MindHYVE is therefore entitled to exemplary damages of up to two times the amount of actual damages under 18 U.S.C. § 1836(b)(3)(C), and an award of reasonable attorney's fees under 18 U.S.C. § 1836(b)(3)(D).

39. As a direct and proximate result of Nachat's misappropriation, MindHYVE has been damaged in an amount to be proven at trial, but in excess of the jurisdictional limits of the Court, and will continue to be damaged unless Nachat and Nashawati are enjoined from further misappropriation and required to return all misappropriated materials.

**SECOND CAUSE OF ACTION**

**Violations Of The California Uniform Trade Secret Act**

**(Cal. Civil Code § 3426, *et seq*.)**

***(Against All Defendants)***

40. MindHYVE incorporates by reference the preceding paragraphs as though fully set forth herein.

41. MindHYVE possesses trade secrets as defined by California Civil Code § 3426.1(d), including the HYVE-Fusion™ architecture, HYVE-Grid™ infrastructure, Digital Employee configurations, Eve meta-orchestrator, synthetic training data methodologies, proprietary source code, financial information, and business strategy materials. Each of these derives independent economic value from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, and MindHYVE has taken reasonable measures to keep such information secret, including execution of twelve comprehensive confidentiality agreements with Nachat, implementation of role-based access controls, and maintenance of password-protected computer systems.

42. Nachat misappropriated MindHYVE's trade secrets within the meaning of California Civil Code § 3426.1(b) by: (a) acquiring trade secrets through improper means,

including unauthorized access to restricted areas of MindHYVE's computer systems (Fireflies.ai transcripts and executive communications to which he lacked authorized access); (b) disclosing trade secrets without MindHYVE's consent to third parties, including Nashawati; and (c) using trade secrets in a manner that breached a duty to maintain secrecy and limit use, as established by the twelve Agreements executed by Nachat.

43. Nachat's and Nashawati's misappropriation was willful and malicious, entitling MindHYVE to exemplary damages of up to twice the amount of actual damages under California Civil Code § 3426.3(c), and reasonable attorney's fees under California Civil Code § 3426.4.

44. As a direct and proximate result of Nachat's misappropriation, MindHYVE has been damaged in an amount to be proven at trial, but in excess of the jurisdictional limits of the Court.

**THIRD CAUSE OF ACTION**

**Violations Of The Computer Fraud And Abuse Act**

**(18 U.S.C. § 1030)**

***(Against All Defendants)***

45. MindHYVE incorporates by reference the preceding paragraphs as though fully set forth herein.

46. MindHYVE's computer systems—including Fireflies.ai, Microsoft 365, and Azure cloud infrastructure—are "protected computers" within the meaning of 18 U.S.C. § 1030(e)(2) because they are used in and affect interstate and foreign commerce and communication.

47. Nachat and Nashawati intentionally accessed MindHYVE's protected computers without authorization or in excess of his authorization, within the meaning of 18 U.S.C. § 1030(a)(2) and (a)(4), by accessing areas of MindHYVE's computer systems to which he was not authorized.

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

48. Nachat accessed Fireflies.ai meeting transcripts from meetings between MindHYVE's CEO and CFO, and between the CEO and a prospective customer, to which Nachat was not an invited participant and to which he lacked authorization. Access to these private executive meeting transcripts required Nachat to exploit administrative access privileges to reach areas of MindHYVE's systems—specific files, folders, and meeting records—that were restricted from his access as Vice President of Product Management.

49. Nachat further intentionally accessed MindHYVE's protected computers without authorization or in excess of his authorization, within the meaning of 18 U.S.C. § 1030(a)(2) and (a)(4), by accessing MindHYVE's secure recording system to obtain audio recordings of communications between MindHYVE executives from computer systems for which he was not authorized. Access to these recordings required Nachat to exploit administrative access privileges to reach areas of MindHYVE's systems—specific files, folders, and meeting records—that were restricted from his access as Vice President of Product Management.

50. Nachat further intentionally accessed MindHYVE's protected computers without authorization or in excess of his authorization, within the meaning of 18 U.S.C. § 1030(a)(2) and (a)(4), by accessing the source code for the MindHYVE AI models from computer systems for which he was not authorized. Access to this source code required Nachat to exploit administrative access privileges to reach areas of MindHYVE's systems—specific files, folders, and meeting records—that were restricted from his access as Vice President of Product Management.

51. Nachat further intentionally accessed MindHYVE's protected computers without authorization or in excess of his authorization, within the meaning of 18 U.S.C. § 1030(a)(2) and (a)(4), by accessing MindHYVE's Mercury banking platform through computer systems for which he was not authorized. Access to this banking platform required Nachat to exploit administrative access privileges to reach areas of MindHYVE's

BRIGGS ALEXANDER A PROFESSIONAL LAW CORPORATION

systems—specific files, folders, and meeting records—that were restricted from his access as Vice President of Product Management.

52. Nachat further intentionally accessed MindHYVE's protected computers without authorization or in excess of his authorization, within the meaning of 18 U.S.C. § 1030(a)(2) and (a)(4), by accessing MindHYVE's Microsoft 360 account through computer systems for which he was not authorized. Access to this account required Nachat to exploit administrative access privileges to reach areas of MindHYVE's systems—specific files, folders, and meeting records—that were restricted from his access as Vice President of Product Management.

53. Nachat further intentionally accessed MindHYVE's protected computers without authorization or in excess of his authorization, within the meaning of 18 U.S.C. § 1030(a)(2) and (a)(4), to download files such as "VA - public.zip," "NEW VAOLV - public_nv.zip," "VALVOLINE PROJ - V111.zip," "VALVOLINE - VALVOLINE.zip," "PHOTOSHOP FILES - 6.9 Sourcefile (2)(1).zip," and "image.PNG" through computer systems for which he was not authorized. Access to these files required Nachat to exploit administrative access privileges to reach areas of MindHYVE's systems—specific files, folders, and meeting records—that were restricted from his access as Vice President of Product Management.

54. By accessing these restricted areas of MindHYVE's systems, Nachat obtained information from specific files, folders, and databases to which his access was not authorized, and thereby exceeded his authorized access within the meaning of 18 U.S.C. § 1030(e)(6) and the standard articulated in *Van Buren v. United States*, 593 U.S. 374 (2021).

55. As a direct and proximate result, MindHYVE has suffered damage and loss as defined in 18 U.S.C. § 1030(e)(8) and (e)(11), including costs of responding to Nachat's unauthorized access, conducting damage assessments, and restoring the integrity and security of its systems, in an amount to be proven at trial, but in excess of the jurisdictional

BRIGGS ALEXANDER
A Professional Law Corporation

limits of the Court. MindHYVE is entitled to compensatory damages, injunctive relief, and other equitable relief under 18 U.S.C. § 1030(g).

**FOURTH CAUSE OF ACTION**

**Violations Of The Comprehensive Computer Data Access And Fraud Act**

**(Cal. Penal Code § 502)**

***(Against All Defendants)***

56. MindHYVE incorporates by reference the preceding paragraphs as though fully set forth herein.

57. Nachat and Nashawati knowingly and without permission accessed MindHYVE's computer systems, computer networks, and computer data, and without permission took, copied, and made use of data from MindHYVE's systems within the meaning of California Penal Code § 502(c

58. Nachat's conduct violated California Penal Code § 502(c)(1) (knowingly accessing without permission and altering, damaging, deleting, destroying, or otherwise using data), § 502(c)(2) (knowingly accessing without permission and taking, copying, or making use of data), and § 502(c)(3) (knowingly and without permission using or causing to be used computer services).

59. As a direct and proximate result, MindHYVE has suffered damage and loss, including expenditures reasonably and necessarily incurred to verify that its computer system, computer network, computer program, and/or data was or was not altered, damaged, or deleted by the access, in an amount to be proven at trial, but in excess of the jurisdiction limits of the Court.

60. Pursuant to California Penal Code § 502(e), MindHYVE is entitled to recover compensatory damages, including all expenditures reasonably and necessarily incurred to verify whether its systems, data, and programs were altered, damaged, or deleted, as well as injunctive relief and other equitable relief.

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

## FIFTH CAUSE OF ACTION

### Breach Of Contract

***(Against Defendant Nachat)***

61. MindHYVE incorporates by reference the preceding paragraphs as though fully set forth herein.

62. On January 20, 2026, Nachat entered into the Agreements with MindHYVE, with an effective date of January 1, 2026.

63. MindHYVE performed its obligations under Agreements.

64. Nachat materially breached the Agreements by: accessing MindHYVE's data and computer systems for non-company business; accessing data and computer systems for his own personal purposes; attempting to bypass or weaken the security around the data and computer systems; downloading and copying proprietary trade secrets and confidential information; and sharing this improperly-obtained data and system information with a third party.

65. As a direct and proximate result of Nachat's breach, MindHYVE has been damaged in an amount to be proven at trial, but in excess of the jurisdictional limits of the Court.

## SIXTH CAUSE OF ACTION

### Breach Of Fiduciary Duty

***(Against Defendant Nachat)***

66. MindHYVE incorporates by reference the preceding paragraphs as though fully set forth herein.

67. As Vice President of Product Management, Nachat occupied a position of trust and confidence and owed fiduciary duties to MindHYVE, including the duty of loyalty, the duty of care, and the duty to act in good faith and in MindHYVE's best interests. These duties arose as a matter of law from Nachat's managerial position and corporate officer status.

68. Nachat breached his fiduciary duties through conduct independent of and in addition to any misappropriation of trade secrets, including: (a) secretly stockpiling company materials for personal leverage, as demonstrated by the "JUST INCASE" subject line; (b) transmitting proprietary materials to a third-party business associate, Nashawati, for purposes unrelated to and adverse to MindHYVE's interests; (c) characterizing company materials as evidence of purported wrongdoing by MindHYVE's CEO and stockpiling them for leverage, as demonstrated by the "Admission of Embezzlement" and "Admission EMBEZ" subject lines; (d) secretly recording or obtaining recordings of executive meetings and weaponizing them against MindHYVE's leadership, as demonstrated by the "Billal Crash Out" subject line; (e) pursuing a side project or collaboration with Nashawati using MindHYVE's proprietary materials while employed by and owing duties to MindHYVE; and (f) continuing this course of conduct within forty-eight hours of executing contracts explicitly acknowledging his duties, thus demonstrating his willful and conscious disregard of his fiduciary obligations.

69. This claim is based on Nachat's breach of his fiduciary duty through conduct that is independently wrongful apart from any misappropriation of trade secrets, including his preparation to use company materials as leverage against MindHYVE, his collaboration with a third-party business associate using company resources, and his weaponization of confidential recordings. *See Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495 (2013) (breach of fiduciary duty not preempted by CUTSA when based on independently wrongful conduct).

70. As a direct and proximate result of Nachat's breach of fiduciary duty, MindHYVE has been damaged in an amount to be proven at trial, but in excess of the jurisdictional limits of the Court.

71. Nachat's conduct, as alleged above, was conducted with malice, oppression, and/or fraud, thus justifying the imposition of punitive damages.

BRIGGS ALEXANDER
A PROFESSIONAL LAW CORPORATION

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff MindHYVE.ai, Inc. respectfully prays for judgment against Defendant Shadi Nachat and Defendant Yahya Nashawati as follows:

1. For a temporary restraining order, preliminary injunction, and permanent injunction: (a) requiring Nachat to immediately return all MindHYVE materials in his possession, custody, or control; (b) requiring Nachat to permanently delete all MindHYVE materials from all personal devices, accounts, and cloud storage, subject to forensic verification; (c) prohibiting Nachat from using, disclosing, or disseminating any MindHYVE trade secrets, confidential information, or proprietary materials; (d) requiring Nachat to identify under oath every person or entity to whom he has disclosed MindHYVE materials; and (e) requiring Nachat to preserve all evidence related to his receipt, possession, use, and disclosure of MindHYVE materials;

2. For compensatory damages in an amount to be proven at trial;

3. For exemplary damages of up to two times the amount of actual damages under 18 U.S.C. § 1836(b)(3)(C) and California Civil Code § 3426.3(c) for willful and malicious misappropriation;

4. For exemplary damages for breach of fiduciary duty.

5. For restitution and disgorgement of any profits Nachat or any third party has derived from the misappropriated trade secrets;

6. For reasonable attorney's fees and costs of suit under 18 U.S.C. § 1836(b)(3)(D), California Civil Code § 3426.4, and any other applicable statute;

7. For pre-judgment and post-judgment interest as allowed by law;

8. For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff MindHYVE.ai, Inc. hereby demands a trial by jury on all claims and issues so triable.

DATED: April 23, 2026

BRIGGS ALEXANDER, APLC

Peter Sunukjian, Esq.
Attorneys for MindHYVE.ai, Inc.