Justin Eballar, Esq. [Bar No. 294718]
Enara Law CA PC
2372 Morse Ave., Ste. 706
Irvine, CA 92614
(949) 996-9225
Justin@enaralaw.com
Filings@enaralaw.com

Attorney for Defendant
*Shadi Nachat*

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**(SOUTHERN DIVISION – SANTA ANA)**

| | |
|---|---|
| MINDHYVE.AI, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>SHADI NACHAT, an individual; YAHYA NASHAWATI, an individual; and DOES 1-20,<br><br>Defendants. | Case No.: 8:26-cv-00971-SSS-ADS<br><br>**DEFENDANT SHADI NACHAT'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 25, 2026<br>Time: 2:00 p.m.<br>Ctrm: 2<br>Judge: Hon. Sunshine Sykes |

**TO THE HONORABLE SUNSHINE SYKES, PLAINTIFF MINDHYVE.AI, INC., AND ALL INTERESTED PARTIES:**

**NOTICE IS GIVEN** that on September 25, 2026, at 2:00 p.m., or as soon thereafter as the matter can be heard via remote Zoom video appearance per Courtroom Rules, Defendant Shadi Nachat ("Nachat") will bring a special motion to strike (commonly known as an anti-SLAPP motion) and move the court to dismiss Plaintiff's Complaint.

The special motion to strike is made under Code of Civil Procedure section 425.16 because the claims and causes of action asserted against Nachat are based on actions taken by Nachat were furtherance of his right to free speech under the United States Constitution or the California Constitution and were in connection with a public issue or an issue of public interest. *See* Cal. Civ. Proc. § 425.16 (the "anti-SLAPP statute"); *see also id*. at 425.16(e)(4). Specifically, the allegedly "infiltrated" transcripts and audio recordings of meetings kept in the normal course of Plaintiff MindHYVE.ai, Inc.'s business evidence conduct amounting to fraud, securities fraud, tax fraud, and investor fraud, among other crimes and civil violations, and were secured for the purpose reporting said information to government authorities –thus triggering the protections of California's anti-SLAPP statute.

Plaintiff fails to allege, and cannot provide any sufficient evidence to support its claims against Nachat. Based on the facts alleged, Plaintiff is unable to establish several of its causes of action, and in the alternative, those that may state a cause of action cannot apply as a matter of law as they are Strategic Lawsuits Against Public Participation.

Nachat also brings this motion as a motion to dismiss on the same bases, to the extent that the Complaint or the causes of action therein are not subject

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

to the anti-SLAPP statute. Plaintiffs' claims also fail for all the same reasons. Many are invalid as a matter of law or they are inadequately pled.

Lastly, Nachat seeks an award of attorney's fees and costs as the prevailing party on a special motion to strike pursuant to California's Anti-SLAPP statute. Cal. Civ. Proc. § 425.16.

This motion is based upon this Notice, the Memorandum of Points and Authorities herein, the Declarations of Shadi Nachat and Justin Eballar, Esq., the pleadings and records on file in this action, any reply brief that may be filed, and upon such further argument as may be presented at the hearing of this motion.

DATED: August 28, 2026 ENARA LAW

By: ____________________
Justin Eballar, Esq.
Attorney for Defendant
Shadi Nachat

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 6
II. RELEVANT BACKGROUND FACTS ........ 7
a. Plaintiff's Founder & CEO's History of Fraud and Embezzlement ........ 7
b. Nachat's Employment with DV8 Infosystems and MindHYVE ........ 8
c. Nachat's Discovery of Conduct Evidencing Fraud and Corporate Misappropriation Similar to That of Faruki's Prior Criminal Convictions and Civil Judgment ........ 9
III. LEGAL STANDARD ........ 10
a. Standard for Motions to Dismiss ........ 10
b. Standard for Anti-SLAPP Special Motions to Strike ........ 10
IV. ARGUMENT ........ 11
a. The Anti-SLAPP Statute Applies ........ 11
b. Plaintiff Cannot Demonstrate a Probability of Prevailing and For These Same Reasons, Fails to State a Cause of Action ........ 13
c. Plaintiff's Complaint Fails to State an Enforceable Cause of Action ........ 14
d. Defendant Nachat Should be Awarded Fees and Costs ........ 14
V. CONCLUSION ........ 14

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 10

*Bonni v. St. Joseph Health System*, 11 Cal. 5th 995 (2021) ........ 10–11

*CoreCivic, Inc. v. Candide Group, LLC*, 46 F.4th 1136 (9th Cir. 2022) ........ 10–11

*DaimlerChrysler Motors Co. v. Lew Williams, Inc.*, 142 Cal. App. 4th 344 (2006) ........ 11

*Geiser v. Kuhns*, 13 Cal. 5th 1238 (2022) ........ 11

*Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006) ........ 10–11

*Securities Exchange Commission v. Faruki*, No. 11-C-05406 (N.D. Ill.) ........ 8

*Tishfield v. Faruki*, No. 11-CV-6359 (S.D.N.Y.) ........ 8

*United States v. Faruki*, No. 1:13-cr-00117-1 (N.D. Ill.) ........ 7–8

*Wilson v. Cable News Network, Inc.*, 7 Cal. 5th 871 (2019) ........ 11

## STATUTES AND RULES

Cal. Code Civ. Proc. § 425.16 ........ 2–3, 10–12, 14–15

Fed. R. Civ. P. 12(b)(6) ........ 10–11

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

During his employment with Plaintiff MindHYVE, Nachat acquired evidence of fraud, tax fraud, investor fraud, misappropriation of corporate accounts, and intentional misrepresentations to employees, among other things. Since Plaintiff MindHYVE discovered Nachat's acquisition of this information, it has used fear, intimidation, and threats to "persuade" Nachat to delete the incriminating information. MindHYVE has made it clear in its communications to Nachat that the only way he will find peace from MindHYVE and its convicted felon CEO Belal Faruki is if Nachat destroys the documents incriminating him.

The lawsuit before this Court is MindHYVE and Faruki's most recent iteration of its campaign to silence and intimidate Nachat so that it can avoid exposure.

Almost every cause of action asserted by Faruki through his corporation, MindHYVE, is predicated on confidentiality agreements that his own allegations establish *did not exist at the time the alleges breaches of those agreements occurred*. Plaintiff confidently accuses Nachat of engaging in a six month "Systematic Exfiltration" confidential information from MindHYVE in violation of four confidentiality agreements (Compl., ¶ "C", Exs. A-D). It then concludes its "Systemic Exfiltration" allegations by admitting none of those agreements existed until practically the very last day of Nachat's alleged "exfiltration." *See* Compl. ¶ 25.a-h. (describing conduct between August 2025 and January 2026 while alleging that absolutely no confidentiality agreements existed until January 20, 2026).

The allegations describe eight instances of alleged exfiltration when Plaintiff knew that at least half of those instances involved Nachat emailing himself documents and information wholly unrelated to Faruki, MindHYVE, or its DV8 Infosystems

(MindHYVE's prior identity[1]). Nachat's testimony credibly establishes this and Faruki will be unable to deny this without perjuring himself.

Among the relevant instances alleged, MindHYVE attempts to creatively describe emails and files titled "Admission of Embezzlement" and "Crash Out" as something other than what they clearly are on their face. Nachat did not take one trade secret. He took transcripts of conversations where MindHYVE CEO Belal Faruki admits to his own tax fraud in hiding personal debt and income in the realms of $400,000 and $800,000 as well as his acquiescence in his Chief Operative Officer's use of DV8 and MindHYVE as tax shelters. Faruki describes his tactics for making transactions untraceable by the IRS through the use of certain cryptocurrencies and offshore bank accounts, and more. Nachat discovered this information and despite the risk, chose to do the brave thing that many employees might be too afraid to do – take that information and report him.

–*This* is what MindHYVE's lawsuit is about. It is not about trade secrets because no trade secrets were taken. It is not about breaches of confidentiality agreements because no such agreements existed at the time of Nachat's alleged bad acts. It is about a convicted felon still engaged in the same conduct that got him put in prison in the first place trying to cover up his new misdeeds and avoid getting in trouble (again) with U.S. Attorney, Securities and Exchange Commission, and his investors.

## II. RELEVANT BACKGROUND FACTS

### a. Plaintiff's Founder & CEO's History of Fraud and Embezzlement

In October 2024, Nachat was hired by MindHYVE's predecessor, DV8 Infosystems. Both entities  are owned, managed, and controlled by Belal Faruki.

[1] DV8 was served with a Citation to Discover Assets in connection with Faruki's conviction for six counts of wire fraud (CDCA Docket No. 1:13-cr-00117-1), and around the time it was held in contempt for its failure to comply, DV8 Infosystems seemed to disappear and be seamlessly replaced by MindHYVE.

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

On January 17, 2014, Faruki was sentenced to 48 months in prison on six counts of wire fraud.[2] *U.S. v. Faruki,* N. Dist. Ill., 1:13-CR00117-1, Dk. 84.) The indictment accuses Faruki of misrepresenting funding and finances for the purpose of inducing no less than $1,500,000 in investments from two private individuals. (*Id*. at Dk. 1.)

The criminal case paralleled allegations from the Securities and Exchange Commission ("SEC") and investor, Marc Tishfield for the same or similar conduct. Each case resulted in judgments against Faruki and his entities. (*Securities Exchange Commission v. Faruki, et al.*, N. Dist. Ill, 11-C-05406, Dk. 136; *Tishfield v. Faruki, et al.*, S. Dist. NY, 11-CV-6359, Dk.70.)

**b. <u>Nachat's Employment with DV8 Infosystems and MindHYVE</u>**

On October 22, 2024, Nachat was hired as a software engineer for DV8 Infosystems and was eventually promoted to Vice President of Product Management. (Nachat Decl. ¶¶ 3-5.) Nachat played a direct role in DV8's growth for more than one year before it was succeeded or replaced by MindHYVE.ai.

At MindHYVE.ai, Nachat seamlessly continued his role and DV8's work, products, and services continued as if nothing had changed. (Nachat Decl. ¶ 6.) Nachat was not an employee of Plaintiff MindHYVE during the period of August 2025 and (most of) January 2026, which is the time period material to nearly all, if not all of Plaintiff's claims. (Nachat Decl. ¶¶ 6-7, Ex. A.)

On February 6, 2026, Nachat was terminated "for cause" after Faruki accessed Nachat's personal email and discovered he had emailed himself transcripts of recordings between Faruki and others. (Nachat Decl. ¶ 9.) Faruki seemed to know that the information Nachat obtained was problematic for him because Faruki confronted him about the documents in a hostile matter and almost immediately threatened to report Nachat to Federal and city authorities. (Nachat Decl. ¶¶ 37-38.)

[2] As of May, June, and August of 2024, Faruki, DV8, and MindHYVE are in contempt of court for multiple failures to appear. As of August 20, 2025, a Citation to Discover Assets appears to remain outstanding. (CDCA, 13-CR-0117)

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

As VP of Product Management, Nachat had wide ranging authorization to access company files and documents. (Nachat Decl. ¶¶ 15-19.) However, even without his upper-management authority, the transcripts that Nachat is alleged to have "exfiltrated" from MindHYVE were part of a software platform called Fireflies that stored audio recordings, transcripts, and notes from meets that occurred at MindHYVE. This platform was commonly used and widely accessible to all MindHYVE employees. (*Id.*) This was by MindHYVE's design so that employees could easily access information if they missed a meeting or needed to review a past discussion. (*Id.*)

**c. <u>Nachat's Discovery of Conduct Evidencing Fraud and Corporate Misappropriation Similar to That of Faruki's Prior Criminal Convictions and Civil Judgment</u>**

In August of 2025, Nachat discovered two transcripts rife with admissions indicating that Faruki is, yet again, engaged in fraud, tax fraud, and embezzlement related activities such as running his personal finances through corporate accounts, double dipping tax benefits, claiming large personal debts and income (in ranges of $400,000 and $800,000) as corporate finances, and essentially laundering money to avoid taxation through the use of cryptocurrencies and offshore bank. (Nachat Decl. ¶¶ 25-29, 30-33.) Among all the documents Plaintiff has cited in its complaint (*see* Compl. ¶ 25), this entire case is really about those two transcripts. MindHYVE and Faruki apparently will seek to convince the Court that Federal and California law consider recorded statements unequivocally describing the techniques used so that transactions cannot be discovered by the IRS to be in the realm of "confidential" or a trade secret. (*See* Nachat Decl. ¶ 32, Ex. E, p. 35; *see also* Nachat Decl. ¶ 34, 35.)

In summary fashion since there are nearly 100 pages of transcript – the unredacted portions of these "confidential" transcripts at the very least raise

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

suspicions, and at the most, establish, tax evasion, money laundering, investor fraud, and tax fraud among other things.

Despite the length of Plaintiff's complaint, these transcripts are the complete universe of relevant, material information related to MindHYVE. (*See* Nachat ¶¶ 34-35.)

## III. LEGAL STANDARD

### a. Standard for Motions to Dismiss

Under Civil Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts that, if true, would entitle the complainant to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," and cannot be based on "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### b. Standard for Anti-SLAPP Special Motions to Strike

Federal courts *in* California can apply the anti-SLAPP statute in connection with covered claims. *See, e.g., CoreCivic, Inc. v. Candide Group,* LLC, 46 F.4th 1136, 1141-1142 (9th Cir. 2022); *see also* Cal. Code Civ. Proc. ("CCP") § 425.16. The anti-SLAPP statute is "a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1055-1056 (Cal. 2006). The anti- SLAPP analysis proceeds in two steps.

The first step is to determine whether the plaintiff's claims arise out of protected activity. *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (quoting CCP § 425.16(b)(1)). Such protected activity includes conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. Cal. Code Civ. Proc. § 425.16(e)(4).

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

Conduct is in furtherance of protected First Amendment speech if it (1) implicates a public issue and (2) contributes to public discussion of such issue. *Geiser v. Kuhns* 13 Cal. 5th 1238, 1243 (2022).

The second step is an inquiry as to whether the plaintiff has demonstrated a probability of prevailing on the claim(s). *See Geiser*, 13 Cal.5th at 1243; *see also DaimlerChrysler Motors Co. v. Lew Williams, Inc.* (2006) 142 Cal.App.4th 344, 350. To do so, the plaintiff must "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Rusheen v. Cohen,* 37 Cal.4th 1048, 1055-1056 (Cal. 2006).

Federal Courts evaluate this second prong on a standard akin to a 12(b)(6) motion to dismiss, determining whether a complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *CoreCivic,* 46 F.3d at 1143-1144.

## IV. <u>ARGUMENT</u>

### a. The Anti-SLAPP Statute Applies

By its terms, Code Civ. Proc., § 425.16, subd. (e)(4)'s "catchall" provision, extends protection not just to speech and petitioning but to certain conduct in furtherance of speech and petitioning. *Bonni*, 11 Cal. 5th at 1020 (2021). This includes ancillary acts used to facilitate a defendant's free speech. *Id*. Qualifying conduct should bear a sufficiently substantial relationship to the defendant's ability to speak on the identified matter of public concern. *Wilson v. Cable News Network, Inc.,* 7 Cal.5th 871, 894 (2019).

The only reason Nachat's motion falls under Section 425.16(e)'s catchall provision (rather than the specific subdivisions applicable to statements in connection with government authority review or statements made in a public forum) is that

Nachat was terminated before he had sufficient time to publish and report Plaintiff's conduct. (Nachat Decl. ¶¶ 46-54.)

Plaintiff asserts eight (8) alleged incidents of "systemic exfiltration." (Compl. ¶¶ 24-25.) Among those, only four (4) even remotely implicate alleged intellectual property belonging to it:

1. A fireflies.ai transcript of MindHYVE's CFO, Brian Walker, confronting Faruki over unusual accounting and financial records. (Compl. ¶ 25.a; *see also* Nachat Decl. ¶ 25-33.)
2. An audio recording of one of Faruki's many arbitrary and knowingly false valuations of Restricted Stock Units used a "carrot on a stick" to retain weary employees. (Nachat Decl. ¶34.2.)
3. An audio recording of Faruki shouting and cursing at employees about conduct that "if [he] goes down, [he's] taking us with him." (Nachat Decl. ¶ 34.3.)
4. A .zip file that includes a 50-page transcript between Faruki and Jason Norlund wherein Faruki admits to multiple instances of fraud and deceit. (Nachat Decl. 34.4.)

The other four emails are wholly irrelevant to MindHYVE or the claims alleged in its complaint:

1. The "VALVOLINE" files that Plaintiff implies contain proprietary source code belonging to MindHYVE in actuality contain source code belonging to Nachat and non-MindHYVE colleague on a completely unrelated project. Faruki knew this at the time of filing his complaint because Faruki knows that his business does not generate "code." (Nachat Decl. ¶¶ 35.1-35.2.) It creates "wrappers" for preexisting artificial intelligence engines and markets them as its own proprietary product. (*Id.*)

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

2. The "MERCURY BANK" email contains Nachat's personal banking information. Faruki knew this at the time of filing as well because he downloaded each of these documents before terminating Nachat. (Nachat Decl. ¶¶ 35.3-35.4, Ex. F.)
3. "CHAT BACKUP.txt" is a file containing messages that Nachat sent to himself as notes. The file includes links to YouTube videos, retail stores, and innocuous work notes. (Nachat Decl. ¶¶ 35.5, Ex. G.)
4. The image attached to the email titled "DONT" is an artificial intelligence generated image unrelated to MindHYVE, its operations, or its property. (Nachat Decl. ¶ 35.6.)

The emails and files that could possibly be relevant to Plaintiff's material allegations are, in reality, libraries of Faruki's own admissions of fraud, personal use of corporate finances, and various manipulations and misappropriations of corporate finances. (Nachat Decl. ¶ 36.) Not one file contains any information pertaining to the development, design, ideas, prototypes, or any aspect of MindHYVE's alleged AI "product(s)." (*Id.*)

**b. Plaintiff Cannot Demonstrate a Probability of Prevailing and For These Same Reasons, Fails to State a Cause of Action**

Plaintiff absolutely has no evidence that even one part of a trade secret was appropriated by Nachat because no such conduct occurred. The programming files that Plaintiff cleverly alleges to "indicate organized collaboration using MindHYVE proprietary materials" are full of software code – something that Faruki has proudly exclaimed to potential customers as forbidden at MindHYVE. (*See* Nachat Decl., Ex. E, p. 11[highlights and circling added for emphasis]; *see also* Nachat Decl. ¶ 35.1.)

Plaintiff has made straining efforts to describe files that he has seen and likely stored in his own electronic files as evidence of intellectual property theft. In reality,

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

MindHYVE and Faruki *know* that is not the case because they have seen the files and they are exactly as Nachat describes them to be.

The Mercury Bank document for example, Plaintiff will find it difficult, if not impossible to produce evidence establishing that MindHYVE had any banking relationship with Mercury Bank –because no such evidence exists.

The only information "exfiltrated" from MindHYVE were two transcripts containing no trade secrets and information specifically carved out of every confidentiality and non-disclosure agreement signed by Nachat (to the extent those are relevant considering they did not exist at the time of Nachat's alleged exfiltration.

**c. Plaintiff's Complaint Fails to State an Enforceable Cause of Action**

This case centers around two documents "taken from" MindHYVE in August of 2025. Those documents are transcripts of criminal discussions, which by their very definition cannot be trade secrets and cannot be protected by any law or contract as a matter of law and public policy.

The breach of contract actions fail on their face because Plaintiff's own complaint acknowledges that transcripts were "taken" in August of 2025and that no confidentiality agreements existed between Plaintiff and Nachat until January 20, 2026 – five months after Nachat's alleged malfeasance.(Compl. ¶¶ 25.a, 25.h.)

**d. Defendant Nachat Should be Awarded Fees and Costs**

Under California Code of Civil Procedure section 425.16(c)(1), a prevailing defendant on a special motion to strike is entitled to attorneys' fees and costs incurred. Nachat seeks to recover the fees and costs he has incurred in challenging Plaintiff's frivolous filing based on a noticed motion following the granting of this motion.

## V. <u>CONCLUSION</u>

For the above reasons, Defendant Shadi Nachat respectfully requests this Court to dismiss Plaintiff's Complaint for its attempt to infringe upon Defendant Nachat's statutory and constitutional rights in violation of California Code of Civil Procedure

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

section 425.16, and to the extent any causes of action remain following that ruling, for all other causes of action to be dismissed for failure to state a cause of action. Defendant further requests his reasonable attorneys' fees and costs pursuant to California's Anti-SLAPP statute. Cal. Civ. Proc. § 425.16.

DATED: August 28, 2026 ENARA LAW

By: ______________________
Justin Eballar, Esq.
Attorneys for Defendant
Shadi Nachat