Justin Eballar, Esq. [Bar No. 294718]
Enara Law CA PC
2372 Morse Ave., Ste. 706
Irvine, CA 92614
(949) 996-9225
Justin@enaralaw.com
Filings@enaralaw.com

Attorney for Defendant
*Shadi Nachat*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

MINDHYVE.AI, INC., a Nevada corporation,

Plaintiff,

vs.

SHADI NACHAT, an individual; YAHYA NASHAWATI, an individual; and DOES 1-20,

Defendants.

Case No.: 8:26-cv-971

**DECLARATION OF DEFENDANT SHADI NACHAT**

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

**DECLARATION OF SHADI NACHAT**

I, Shadi Nachat, hereby declare as follows:

1. I am over the age of 18 and competent to testify as to the facts declared in this declaration. I have personal knowledge of the facts stated here and could competently testify to them if called as a witness.

2. I make this declaration in support of my Special Motion to Strike for Anti-SLAPP and Motion to Dismiss.

**My Employment with MindHYVE.ai and DV8 Infosystems**

3. I am a software engineer and product manager by background and have worked in the technology industry in those roles since 2012. My experience includes roles as a backend engineer at Averroes.ai where I built systems to detect microfractures in semiconductors along with anomaly detection for predicting equipment failure. I also led the development of an artificial intelligence image generation project called Starryai (starryai.com), which was widely successful and now has several million users across multiple operating systems.

4. On October 22, 2024, I was hired as a software engineer for DV8 Infosystems Hawaii N.A., Inc. a company owned, managed, and operated by Belal Faruki ("Faruki"). Eventually, I was promoted to Vice President of Product Management ("Agentic Product Management").

5. In my role as VP of Product Management at DV8 and MindHYVE, I played a direct role in the company's growth. For example, when I started at DV8 in 2024, the company had at the most 1-2 non-executive employees and by the time I left, I had played a major role in growing that number to approximately 48. Although this is nowhere near the 3,800 employees that Faruki is misrepresenting to others (*see infrai* at ¶ 31), it is an accomplishment that I find noteworthy and relevant. I played a central

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

(primary) role in hiring staff, managing staff, building software products, and managing those products once built. I also researched and advised Faruki as to how to train GPT models on the OpenAI platform.

6. On December 31, 2026, my role as VP of Product Management was "transitioned" to MindHYVE.ai, Inc. effective January 1, 2026 "with no break in service" per the Employee Transition Notice I received from MindHYVE.ai, Inc. ("MindHYVE").

7. In other words, I was not an employee of MindHYVE.ai until January 1, 2026. A true and correct copy of my "Transition Notice" is attached hereto as **Exhibit A**.

8. MindHYVE is the "successor organization" of DV8 Infosystems – both entities are owned, managed, and controlled by Faruki.

9. On or about February 6, 2026 I was terminated by MindHYVE after Faruki accessed my personal email and discovered I had sent myself a number of transcripts and audio recordings of his admissions to fraud and deceit. Since then, Faruki made several attempts to silence me from reporting the wrongful conduct I discovered (and which led to my termination). His most recent of those efforts is this lawsuit.

**The Context of My Alleged "Exfiltration" of MindHYVE Information**

10. When I was hired by DV8, I had knowledge of Faruki's conviction, but had been told he was reformed, so I believe it would be safe to work there. Plus, I began with an entry level position and just wanted to work.

11. During my employment, however, I learned of the extent of Faruki's trouble – he was convicted of six (6) counts of Wire Fraud in the Northern District of Illinois on January 17, 2024 (NDIL Case No. 1:13-cr-00117-1) for actions he took as the CEO of the company I was working for.

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

His conviction related to defrauding $1,500,000 from investors in his role as the principal of DV8 Infosystems.

12. This was obviously concerning to me and by August of 2025, it had put me on high alert as to who I am employed by and what I need to watch out for.

13. During my employment I started to notice a lot of suspicious behavior from Faruki, especially considering his checkered past. I witnessed multiple rage-filled outbursts by Faruki, where he would scream at, cuss at, and threaten staff. In fact, in one of the audio recordings I am alleged to have stolen, Faruki says that *"If I go down, I'm taking all of you down with me,"* alluding to the trouble he is in and the possibility of him being exposed.

14. Prior to my "transition" to MindHYVE, I started hearing rumors of DV8 closing down and everyone being transferred to a sister company called 'MindHYVE' which I think was formed at the same time as DV8 since we were always told we work for the sister company as well. As far as I could tell during my time there, DV8 and MindHYVE were the same company – two names for the exact same business.

15. I am accused of "exfiltrating" files from a software used by DV8/MindHYVE to record, transcribe, and keep notes of meetings that occur in the normal course of business. The program is called Fireflies. I did not exceed my authorized access to view these documents whatsoever.

16. The Fireflies platform allows any and all staff (including me) to view meetings of other staff in case they weren't able to join. Neither DV8 nor MindHYVE had any policy or restrictions as it relates to which meeting histories that employees were authorized to view. This was an intentional policy that ensured information was always available to all staff.

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

17. Each of the transcripts I am accused of "stealing" were accessed in the same manner all employees at MindHYVE access transcripts. I did not circumvent any security or access any data that was not widely available to all DV8/MindHYVE employees.

18. My permissions and authority to access information was particularly broad based on my role. My data access/clearance/permissions included access to all software and software modification platforms such as GitHub files and Microsoft Azure (a system that is, in essence, a software development playground/environment). I also had broad access internal meeting transcripts, operational data, and the like.

19. Regardless of my role, however, MindHYVE's data systems were not set up in a manner that limited employee access to data. At the time of my termination in February of 2026, generally speaking, every single employee at MindHYVE had the permissions[1] necessary to access most electronic documents and files in MindHYVE's file systems, even those for future products. I know this because I am intimately familiar with general file security protocols as part my professional background as well as via my role as VP of Product Management at DV8 and MindHYVE.

20. Most employees, not just VPs, had wide-ranging access to company information regardless of role, title, or rank. I have been a software engineer since 2012 and am familiar with data security policies. I observed very quickly how little such policies were implemented at DV8 and MindHYVE.

**<u>The Documents that MindHYVE Alleges I was Bound By Were Executed Nearly Five Months After My Alleged Theft of Information</u>**

1

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

21. As part of my onboarding at MindHYVE, I recall signing a few agreements related to intellectual property and confidential information. However, I cannot say confidently that all four signed agreements in the complaint were signed by me.

22. Regardless, the "Confidentiality, Trade Secret, and Non-Disclosure Agreement," an "Information Security, Network, and Cloud Access Acknowledgement," a "Data Protection and Privacy Acknowledgment," and an "Equipment, Assets, and Acceptable Use Agreement." (*See* Compl., Exs. A, B, C, D.)

23. *All four of those documents included a "California and Federal Legal Carveout" which states the following*:

> Nothing in this Agreement prohibits Employee from:
> -reporting possible violation of law to a government agency; or
> -participating in a government investigation or proceeding.
>
> (Compl., Ex. A ¶ 8.)
>
> Nothing in this Acknowledgment prohibits Employee from reporting possible violation of law to a government agency or participating in a government investigation or proceeding.
>
> (Compl., Ex. B ¶ 13.)
>
> Nothing in this Acknowledgment prohibits employee from reporting possible violations of law to a government agency or participating in a government investigation or proceeding.
>
> (Compl., Ex. C ¶ 11.)

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

> Nothing in this Agreement limits Employee's rights under applicable law or authorizes unlawful deductions, penalties, or restrictions.
>
> (Compl. Ex. D ¶ 11.)

*24.* ***I did not sign any of these agreements until January 20, 2026, which is several months <u>after</u> Plaintiff MindHYVE alleges I violated them. In fact, as indicated in my "Transition Notice," I was not even an employee of MindHYVE until January 1, 2026.*** True and correct copies of the relevant agreements are attached hereto as **<u>Exhibit B</u>**.

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

**<u>My Suspicions of Unlawful Conduct at MindHYVE and My Eventual Discovery of Evidence Supporting Those Suspicions</u>**

25. In August of 2025, I found a transcript on Fireflies of CEO Belal Faruki being, in essence, confronted by MindHYVE's CFO at the time, Brian Walker. In the transcript, Faruki is telling Walker about his COO using DV8 to commit tax fraud by 'double dipping' tax benefits, among other things. Faruki admits to not only knowing about this, but also to allowing it and allowing it to continue. (*See infra*.) DV8 was effectively shut down just a few months later and was replaced by MindHYVE. Same company, but new name and label.

26. In this transcript, Walker confronts Faruki about concerning accounting problems, tax "double dipping," the use of the corporation to avoid personal taxes on personal debts and income, Faruki's personal use of corporate funds, and Faruki's use of corporate accounting to hide personal

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

income. A true and correct copy of that transcript is attached hereto as **Exhibit C**[2]; *see also,* Compl. ¶ 25.a.

[2] In an abundance of caution, I have redacted the transcript to only show the portions relevant to my declaration and Anti-SLAPP motion. This is out of respect for the "confidential information" allegations in the complaint, despite their lack of merit or truthfulness. I do not agree that any of this information is subject to the confidentiality agreements and am more than willing to produce complete, unredacted copies should the Court deem that proper.

27. Some admissions from that transcript include:

a. Faruki states that he uses "the company like my personal vehicle," and offsets it "in some way or the other." (Ex. C, pp. 18, 38:23–39:04.)

b. Faruki discusses his involvement with MindHYVE's COO, James Barry (a.k.a. "Jim"), in "fabricating cost basis" by using MindHYVE to hide personal income. Faruki even says that he "let him" because he did not care about the tax consequences. Brian characterizes the deductions as potentially being losses "in excess of basis." (Ex. C, pp. 21, 43:59–44:41.)

c. Faruki says Jim routes transactions through DV8 for tax reasons, is "using DV8 as a shell." Faruki also unequivocally admits that he's used the company to write off his own personal debt as bad corporate debt. (Ex. C, pp. 9–10, 19:15–21:26; *see also id.* at 15, 32:10–32:45.)

d. Multiple admissions of "double dipping" or "triple dipping" tax benefits and acquiescence thereto. (Ex. C, pp. 4, 21.)

28. These admissions occur in the context of $812,000 and/or $462,000 *personal loans* between Faruki and his COO, Jim. I am not an accountant, but that seems like an exorbitant amount of personal money to be diverting through a corporation that you manage. (Ex. C, pp. 3-4.)

29. The transcript is Faruki's personal admission of his own personal use of company funds, and his acquiescence in questionable accounting and stock transactions.

30. On August 12, 2025, I emailed myself another transcript –which MindHYVE interestingly makes no mention of – this one is a conversation

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

between Faruki and Jason Norlund. In this transcript, Faruki makes partial admissions to fraud, as well as potential securities-fraud, tax-evasion, and general corporate misappropriation. A true and correct copy of that transcript is attached hereto as **Exhibit D**[3]; *See also,* Compl. ¶ 25.a.

31. In the transcript Faruki makes intentional misrepresentations about having 3,800 employees, approximately $220 million in annual revenue, a $140 million MindHYVE valuation, a BlackRock investment, etc. (Ex. C, pp. 4, ). I know these representations are false because:

a. I held upper management positions at both DV8 and MindHYVE and have personal knowledge that both companies have far less than even 1,000 employees. My estimate is approximately 48 employees, which is nowhere near 1,000 let alone several thousand.

b. Since my termination, I have continued to investigate Faruki and his representations about MindHYVE and its financial status. My investigation has shown that Faruki constantly misrepresents MindHYVE's financials depending on the audience and his goal at that time.

c. I have utilized this information in my discussions with legal journalist Ahmed Shaikh and others who I am only comfortable mentioning *in camera*.

d. My evidence of this includes WhatsApp (international encrypted messaging software) marketing and investment solicitations to 99+ individuals at a time. A true and correct copy of several

[3] In an abundance of caution, I have redacted the transcript to only show the portions relevant to my declaration and Anti-SLAPP motion. This is out of respect for the "confidential information" allegations in the complaint, despite their lack of merit or truthfulness. I do not agree that any of this information is subject to the confidentiality agreements and am more than willing to produce complete, unredacted copies should the Court deem that proper.

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

WhatsApp mass-messages evidencing Faruki's misrepresentations is attached hereto as **Exhibit E** (highlights added for emphasis).

e. My evidence of this also includes Faruki's statements in the Faruki-Walker transcript where he values Jim's (not-paid-for) stock in DV8 at $50 million. (*See* Ex. E, p. 18.)

32. Returning to the Faruki-Norlund transcript, Faruki also admits to using "USDT," a type of cryptocurrency designed to ensure that each "token" equates to one U.S. Dollar. Faruki admits to conducting transactions using this currency because it cannot be discovered by the IRS. (*See* Ex. E, p. 35.) In that passage, he describes some kind of financial manipulation using transactions that are not reported and his use of overseas banks to further hide assets from the government. (*See* id.) These are just the things he is willing to say out loud.

33. The remaining emails that Plaintiff includes in his allegations are completely mischaracterized and largely have nothing to do with MindHYVE at all. (*See* Compl. ¶ 25; *see also, infra*.)

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

**Only Four of the Eight Emailed Alleged to be Material to this Case Have any Relevance Whatsoever**

34. MindHYVE is accusing me of eight (8) alleged incidents of "systemic exfiltration" of its data and proprietary information. (Compl. ¶¶ 24-25.) Among those, only four (4) even remotely implicate property belonging to MindHYVE:

1. A fireflies.ai transcript of MindHYVE's CFO, Brian Walker, confronting Faruki over unusual accounting and financial records. (Compl. ¶ 25.a; *see also supra,* ¶¶ 25-33.)
2. An audio recording of one of Faruki's many arbitrary and knowingly false valuations of Restricted Stock Units used a "carrot on a stick" to retain weary employees. (Compl. ¶ 25.e.) In that recording, which

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

I am unfortunately unable to recover, Faruki announced to all employees that we would eligible for Restricted Stock Units ("RSU") valued somewhere near $20,000,000. It was a completely imagined number as DV8 and MindHYVE had zero revenue – some of that is evidenced in the Walker and Nordlund transcripts.

3. An audio recording of Faruki shouting and cursing at employees about conduct that "if [he] goes down, [he's] taking us with him." (*See generally* Compl., ¶ 25.g.)
4. A .zip file that includes a 50-page transcript between Faruki and Jason Norlund wherein Faruki admits to multiple instances of fraud and deceit. (*See* Compl. ¶ 25.a.; *see also, infra* at ¶¶ 30-33.)

35. The other four emails referenced in the complaint are wholly irrelevant to MindHYVE or the claims it has asserted:

1. The "VALVOLINE" files that Plaintiff implies contain proprietary source code belonging to MindHYVE in actuality contain source code belonging to my co-defendant Yahya Nashawati and I for a completely unrelated project in the field of automotive software. (*See* Compl. ¶ 25.b.)
2. Faruki knew this at the time of filing his complaint because Faruki knows that his business does not generate or utilize code. It creates wrappers for preexisting artificial intelligence engines and markets them as its own proprietary product, which is substantially different than traditional software coding. I am the one who personally taught him all of this while employed with DV8.
3. The "MERCURY BANK" email contains my personal banking information. A true and correct copy of the document attached to that

email, redacted to hide my personal account information is attached hereto as **Exhibit F**.)

4. Faruki knew this at the time of filing as well because he downloaded each of these documents before terminating me.

5. "CHAT BACKUP.txt" is a file containing messages that I sent to myself as notes. The file includes links to YouTube videos, retail stores, and innocuous work notes. A true and correct copy of the referenced .txt file is attached hereto as **Exhibit G**.

6. The image attached to the email titled "DONT" is an artificial intelligence generated image unrelated to MindHYVE, its operations, or its property. Again, Faruki knew this at the time of filing because he accessed all of these files and stored them from my personal email before terminating me.

36. In summary, the emails and files that could possibly be relevant to Plaintiff's material allegations are, in reality, libraries of Faruki's own admissions of fraud, personal use of corporate finances, and various manipulations, misrepresentations, and misappropriations of corporate finances. (*See infra,* at ¶¶ 25-33.) Not one file contains any information pertaining to the development, design, ideas, prototypes, or any aspect of MindHYVE's alleged AI product(s).

**Faruki's Attempts to Silence and Intimidate Me**

37. On February 6, 2026, hours before my termination, Faruki called me to confront me about the transcripts he discovered in my personal email inbox. He was beyond angry in his wording and his tone during that call, and he threatened to report me to authorities if I did not delete the files.

38. Hours after that call, I was terminated after I refused to come to the office out of fear. From the way he was behaving during the phone call, I did not feel safe coming to see him in person. I have witnessed him cuss, scream, insult,

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

and berate several of my coworkers. I also heard rumors that he has kicked garbage cans and slammed desks during his tirades. I did not want to be his next victim.

39. Later that same night, a mutual friend of Faruki and I called me to schedule a meeting. His plan was for me to sit down with Faruki, and three of our mutual friends including the President of Theological Solutions at MindHYVE, one of MindHYVE's major investors, and an unrelated mutual friend so that we could discuss the conflict between Faruki and I.

40. During the meeting, Faruki attempted to leverage our mutual friendships to pressure me to delete the files that he is accusing me of "exfiltrating." Faruki used sympathy to (pressure) me to delete the files I sent to myself. The message from the group was, in essence, that it would the harm people who have spent money investing in the company if the information I held were to become public – that I would somehow be harming our mutual friends and other innocent people if the information I held were to get out.

41. In later calls, Faruki even threatened to report me to law enforcement, including the FBI, to accuse me of crimes related to my alleged "theft" of "trade secrets." He also threatened to file a police report against me.

42. Following my termination, I consulted with a labor and employment lawyer because I knew I had been retaliated against and that MindHYVE had not paid me for the PTO I earned while employed at DV8 and MindHYVE. My attorney at that time contacted MindHYVE to demand my personnel file and damages.

43. The underlying message during each call and meeting was that the only way I would avoid getting into trouble with him (Faruki), whether in the form of criminal allegations and other legal action against me, was to delete the files I have.

44. On March 24, 2026 Faruki's attorney's responded to my attorney by threatening their own lawsuit against me if I should continue to proceed with initiating litigation against them. A true and correct copy of Faruki's response letter

highlighting the relevant excerpts is attached hereto as Exhibit H (passages highlighted for emphasis).

45. Now, I am facing this frivolous and expensive lawsuit that has no only affected my finances but has also falsely damaged my reputation in the community. Now, anyone can look up my name on a simple Google search and see that I am accused of stealing trade secrets, which is a massive problem when seeking employment or fostering business relationships – whether it is true or not, I have to make extra effort to earn the trust of new potential colleagues.

**My Actions Were An Effort to Do What is Right and**
**Had Nothing to Do with Personal Gain**

46. During my time at DV8 and MindHYVE, I witnessed several concerning events, including outbursts and verbal attacks at employees by Faruki. During some of those outbursts, Faruki openly mentioned that he and others could go to jail.

47. These outbursts, coupled with my growing knowledge of Faruki's criminal history, my discovery of his discussions with other executives describing his own fraud raised serious concerns in my mind about the ethics of how DV8 and MindHYVE were being managed. –And, even greater concerns in regard to whether my employment at DV8 and MindHYVE means that I am somehow part of Faruki's illegal operation.

48. During my time at DV8 and MindHYVE I researched Faruki's criminal history. My concerns grew as I noticed similarities between my discoveries and the accusations in the criminal complaint, SEC complaint, and civil complaints against him. (*See, e.g. U.S. v. Faruki,* NDIL Docket No. 13-CR-0117; *Tishfield v. Faruki, et al.,* SDNY Docket No. 11-CV-6359; *SEC v. Faruki*, NDIL Docket No. 11-C-05406; *see also Building Block v. Faruki,* Cook County Sup. Ct., 2024-L-012182)

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

49. The information that MindHYVE accuses me of "exfiltrating" was not acquired for personal gain. In fact, it was quite the opposite – I suffered for it. I endured the loss of my job, repeated threats, false accusations of trade secret theft, damage to my reputation in the community, difficulties in my own business endeavors, and the cost and headache of this lawsuit.

50. I am risking my own reputation and trust in the community I have been involved in for more than fourteen years by doing this. It is worth it to me because I know what I am doing is right and for the betterment of the industry I have worked in since I was a teenager. I have a good reputation in the tech community, but I do fear that my actions in reporting Faruki could effect my relationships with future employers and future business partners who might not perceive me as a "team player."

51. Between approximately February 7, 2026 and today, I have and continue to be in contact several government officials in relation to what I discovered at DV8 and MindHYVE as well as the press, specifically those in the legal journalism field. I have consulted with attorneys in three fields including tax, labor & employment, and civil litigation, as well.

52. I have put myself at risk and took these efforts because it is the right thing to do. Investors, potential customers, and the government are being deceived by Faruki for his own selfish gain…again. –And, that has to stop.

53. MindHYVE and Faruki are searchable on the internet and much of the content that people will find when they search those names is intentionally directed toward inducing investments. I do not want to be part of a deceptive company, and in fact, take issue with what Faruki and his companies are doing, which is why I took the actions I did and why I continue to make efforts to stop him.

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225

54. I was terminated during my efforts to ensure I had sufficient and proper information to report MindHYVE, DV8, and Faruki. Between the time of my termination on February 6, 2026 and today, I have shared this information with my attorneys, journalists, and government authorities as I always intended to do. The fact that I had not yet done so at the time of my termination out of fear and uncertainty as to whether I was prepared to report him should have no bearing on my intent.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: August 28, 2026

Shadi Nachat

ENARA LAW
2372 Morse Ave., Suite 706
Irvine, CA 92614
949.996.9225